IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

|  |  |
|---|---|
| MARSHALL H. MURDOCK, et al., | |
| Plaintiffs, | |
| vs. | No. 11-1220-JDB-egb |
| STATE OF TENNESSEE, et al., | |
| Defendants. | |

---

ORDER ON PENDING MOTIONS
ORDER OF DISMISSAL
AND
GRANTING LEAVE TO AMEND

---

On July 5, 2011, Plaintiffs, Marshall H. Murdock, Tennessee Department of Correction ("TDOC") prisoner number 363417, Charles H. Roberts, TDOC prisoner number 428139, Julius Perkins, TDOC prisoner number 258949, and Rudolph Powers, TDOC prisoner number 95360, all of whom were, at the time, inmates at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a joint *pro se* complaint pursuant to the Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12131—12134, in the United States District Court for the Middle District of Tennessee, accompanied by a legal memorandum. (Docket Entries ("D.E.") 1 & 2.)[1] The named Defendants are the State of Tennessee, TDOC

---

[1]     Murdock is currently confined at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, which is in the Middle District of Tennessee. Roberts is at the Morgan County Correctional Complex ("MCCX") in
(continued...)

Commissioner Derrick R. Schofield; TDOC Assistant Commissioner of Operations Reuben Hodge; former NWCX Warden David Mills; NWCX Deputy Warden Brenda Jones; NWCX Assistant Warden for Operations Melvin Tirey; NWCX Health Care Administrator Samantha Phillips; and NWCX Physicians Assistant Amanda Collins. Each Defendant is sued in his or her individual and official capacities. (D.E. 1 at 5.) Roberts also filed a factual affidavit and on July 15, 2011, he filed a Statement of Jurisdiction. (D.E. 3, 10.) On July 18, 2011, each Plaintiff filed a motion for appointment of counsel. (D.E. 12, 14, 16 & 18.)

After the inmates submitted the required documents, United States District Judge Todd J. Campbell issued an order on July 22, 2011, that granted leave to proceed *in forma pauperis*, assessed each plaintiff one-quarter of the civil filing fee pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), 28 U.S.C. §§ 1915(a)–(b), and transferred the case to this district, where venue is proper. (D.E. 21.) The case was docketed in this district on the same day as the transfer. (D.E. 22.)

Plaintiffs purported to sue on their own behalf and on behalf of all other similarly situated prisoners in TDOC custody. (D.E. 1 at 1.) In an order issued on September 18, 2012, the Court denied class certification. (D.E. 46 at 2–3.) That order also denied the motions for appointment of counsel (id. at 4–5), granted Murdock's motion to voluntarily dismiss his claims against Mills

---

[1]    (...continued)
Wartburg, Tennessee, which is in the Eastern District of Tennessee.

without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) (id. at 9), denied Plaintiff Murdock's motion to add additional defendants located in the Middle District of Tennessee (id. at 9–10), denied Murdock's motion to transfer the case back to the Middle District of Tennessee (id. at 10–11), and denied Roberts' motion to add additional defendants located in the Eastern District of Tennessee (id. at 11).

On October 5, 2012, Roberts filed a motion, titled "Response to Judge Breen's Orders and Motion to Amend the Original Complaint as Necessary." (D.E. 47.) In his pleading, the Plaintiff reiterated his desire to amend his complaint to incorporate violations of the ADA that occurred while he was incarcerated at the MCCX, which is in the Eastern District of Tennessee, and the Charles B. Bass Correctional Complex ("CBCX") in Nashville, Tennessee, which is in the Middle District. This Motion is DENIED for the reasons stated in the September 18, 2012, order with respect to Murdock's similar motion. (See D.E. 46 at 10.) "It is administratively impractical to allow each Plaintiff to amend to make allegations pertaining only to him that are unrelated to the original claims. The Court also is unable to grant injunctive relief" on new claims arising outside this judicial district. (Id.)

On June 3, 2013, Murdock and Roberts filed another "Motion to Transfer This Matter to the United States District Court for the Middle District of Tennessee, Nashville Division Due to Systemic Involvement of All Prisons in Tennessee." (D.E. 48 (additional

3

emphasis omitted).)[2]  That filing asserts that all Tennessee prisons are denying certain treatments to disabled inmates after the TDOC engaged Corizon as its medical provider and Pharmacorp as its pharmacy provider. (Id. at 2.)  According to the Plaintiffs' pleading, inmates are told to "get what you can from the commissary," but inmates without funds are unable to make commissary purchases. (Id.)  The TDOC confiscates all the funds received by some inmates from their prison jobs, leaving them with zero balances. (Id.)  Some inmates, including Murdock and Roberts, have been unable to obtain replacement parts for the Constant Positive Airway Pressure ("CPAP") or Bi-Level Positive Airway Pressure ("BIPAP") devices used to treat their sleep apnea. (Id.)[3] The inmates assert that the Middle District of Tennessee is the proper venue for these new claims because TDOC officials are located in that district. (Id. at 3.)

This Motion is essentially a reiteration of Murdock's previous motions for leave to amend and to transfer this action to the Middle District of Tennessee, and it is DENIED for the reasons previously stated.  The Motion is also denied because, as discussed *infra*, the proposed new claims are not properly addressed under Title II of the ADA.

---

[2]    The pages of this document are not in the correct order.  All page references to this filing refer to the typewritten page numbers on the document.

[3]    The filing also stated that distilled water must be used in CPAP and BIPAP machines (id. at 2–3), but there is no allegation that Murdock and Roberts do not receive distilled water.

The factual allegations of the Complaint are vague. They consist, in their entirety, of the following:

1.   That they are the plaintiffs in pro se and are desirous of a speedy resolution to this matter now before this Honorable Court;

2.   That they are disabled within the meaning and definition of statutes and the words and that this may be shown by petitioners' TDOC medical records;

3.   That they are being discriminated against by the DOC because of their disabilities and denied access to programming, certain education, work programs, transfers, and in cases visits and access to the courts;

4.   That because of their disabilities they are being further discriminated against by being only given menial tasks which do not pay as much as others or even deminimus [sic] wages and further handicapped by forcing their love [sic] ones to travel extensive distances which further contributes to a financial burden and further contributes to petitioners' hardship and causes even more disability as they are not able to obtain proper and necessary medical care and treatment without having to travel extensive distances;

. . . .

5.   That the petitioners would ask this Honorable Court enter a temporary injunction against respondents in this matter now before this Honorable Court for their refusal to allow this class of petitioner (Class "B" or "C" medical) to transfer to other facilities for the reasons supra from which they are excluded, and allow the transfers as requested;

. . . .

9.   That certain members of the class of petitioner/inmate are also denied proper access to the various courts within and/or without Tennessee as they should be at an incarceratory facility closest to whre [sic] the court is located in order to have access to whtnesses [sic], court documents, and other material as well as proper access to legal Materials and a law library, etc., and proper medical care while awaiting the action in said court . . . .

(D.E. 1 at 6—8.)  Plaintiffs seek a temporary restraining order, money damages, and transfers to a prison in the Middle District of Tennessee.  (Id. at 9.)

The Complaint contains no detail about the manner in which each Plaintiff was injured and the role played by each named Defendant.  Attached to the Complaint are 31 pages of inmate grievance documents (D.E. 1-1), which Plaintiffs presumably intend to serve as each prisoner's factual allegations.  Roberts filed a grievance complaining that, because he is classified as B/C medical, he is ineligible to transfer to another TDOC facility.  He asked to be transferred to the CBCX in Nashville, Tennessee.  (D.E. 1-1 at 3.)  Roberts asserts that, because of his confinement at the NWCX, he is being denied family visits and does not receive appropriate medical care in some unspecified manner.  (Id. at 4.) The supervisor's response, signed by Tirey, states that "I can not force another institution to accept an inmate.  I submit names. Prisons have the priviledge [sic] of accepting or denying inmates." (Id. at 5.)

In his factual affidavit, which was submitted with the Complaint, Roberts states, in pertinent part:

> 2.   That in addition to Counselor Blackley named in my grievance dated 3/24/11, I have also talked to Counselors W. Turner and Mays as well as medical staff concerning my request for transfer and all have stated that as I am a person with disabilities and fall within the TDOC classification of a Class "B" medical that I am ineligible for transfer to any other facility, that no-one will accept me for any reason;
>
> 3.   I also inquired of medical and counseling staff about being transferred to a geriatric facility as I am

6

a senior citizen/inmate, but have been told that as I am unable to be "self-sufficient" that I am ineligible for such placement that as I am unable to work I am not allowed to go to such a facility;

4.   That my trial counsel stated that I would be kept "in a place like a nice nursing home" during my incarceration, yet, rather than being so placed, I was send [sic] from the TDOC intake facility straight to the Northwest Correctional Complex (NWCX), which is, in all reality, nothing more than a "Thunderdome," where assaults and robberies, threats and intimidation are rife and the order of the day[.]

(D.E. 3 at 1—2.)

Murdock submitted a grievance in January 2010 in which he stated that "I am being discriminated against for consideration for a incentive transfer to the Geriatrics Unit at either CBCX or DSNF." (D.E. 1-1 at 7.) He avers that he was told by NWCX staff that "I cannot be accepted at any other facility or site offering programs because of my medical condition/classification." (Id. at 8.) The inmate asserts that "there are no programs for me to attend [at NWCX] considering my offense." (Id.) Murdock also submitted documents showing that someone at NWCX sent an email to CBCX asking whether that facility would accept him in its Geriatric Unit, but no response was received. (See id. at 10—11.) In response to an Inmate Inquiry — Information Request submitted by Murdock, someone on the NWCX staff wrote that "I never got a response. A no response is a negative response." (Id. at 11.) In 2008, the prisoner requested a transfer for a staff job at either DSNF, CBCX, or RMSI and was told that "[y]ou are class B medical — you cannot go to any facility as a support worker." (Id. at 13.) In 2009, Murdock was told that "CBCX has a geriatric unit but will

not accept you with your heart problems." (Id. at 14.)  In an unsigned statement dated January 25, 2010, Murdock reiterated the statements in his inmate grievances and stated that he "cannot go to other TDOC facilities/sites offering programs that [he] must complete to be considered for parole because of [his] medical conditions and a Class B medical." (Id. at 15.)  In a grievance dated December 28, 2010, Murdock requested a transfer to "the Geriatrics Unit near Nashville" and noted that it is difficult for his wife to travel to the NWCX to visit him. (Id. at 16, 17.)  In an undated letter to Joe Birch, who is not identified, Murdock complains about inadequate medical treatment at the NWCX. (Id. at 18.)  A grievance response, dated April 11, 2011, lists the various medical conditions from which the inmate suffers. (Id. at 23.)

Perkins submitted a grievance in which he asserts that he suffers from a herniated disc.  His condition apparently is not severe enough for a transfer to the Lois M. DeBerry Special Needs Facility in Nashville, but he must travel to Nashville in a prison van from time to time for medical assessments and court appearances.  The journey allegedly takes between four and six hours, and Perkins suffers discomfort during the trip.  He seeks to be transferred to any facility in Nashville.  His grievance also complains, without elaboration, that he is "being forced to not follow medical instruction, and not honor doctors of competent state certified advise." (Id. at 31.)  The grievance response states that Perkins is not a surgical candidate and that he is

8

being treated with "medication, conservatively, for pain management." (Id. at 29.)  The response also states that

> Mr. Perkins is able to provide self-care and conduct activities of daily living.  At this time, his condition can be managed on an out patient basis with specialty consultation services as clinically indicated.
>
> This case has been renew [sic] with institutional providers.  There is currently no medical justification to request a transfer to DSNF.  CBCX is not a prison designed to provide special medical services. . . .
>
> As previously stated, Mr. Perkins' travel and/or restraint does not pose a risk to his health or safety, though we understand it is not comfortable.

(Id.)

Powers has provided no information about his specific claims.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B)(i)—(iii).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677—79, 129 S. Ct. 1937, 1949—50 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555—57, 127 S. Ct. 1955, 1964—66, 167 L. Ed. 2d 929 (2007), are applied.  Hill v. Lappin, 630 F.3d 468, 470—71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court considers the factual allegations in the complaint to determine if they

9

plausibly suggest an entitlement to relief." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks, alteration & citation omitted). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950; see also Twombly, 550 U.S. at 555 n.3, 127 S. Ct. at 1964—65 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." Hill, 630 F.3d at 470 (internal citation omitted).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept fantastic or delusional factual

> allegations as true in prisoner complaints that are
> reviewed for frivolousness.

Id. at 471 (internal quotation marks & citations omitted).


"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks & citation omitted). *Pro se* litigants and prisoners, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), reh'g denied (Jan. 19, 1990); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading[.]") (internal quotation marks & citation omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are

properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."), cert. denied, ___ U.S. ___, 132 S. Ct. 461, 181 L. Ed. 2d 300 (2011).

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. § 12131(2). The term "public entity" includes "any State . . . government" and "any department, agency, special purpose district, or other instrumentality of a State[.]" Id. §§ 12131(1)(A)–(B). The United States Supreme Court has held that Title II of the ADA applies to prisoners housed in state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 213, 118 S. Ct. 1952, 1956, 141 L. Ed. 2d 215 (1998). Thus, Title II applies to claims that an inmate has been denied the benefit of, or excluded from participation in, "recreational activities, medical services, and

educational and vocational programs." Id. at 210, 118 S. Ct. at 1955 (internal quotation marks omitted).

The proper defendant to a suit under Title II of the ADA is the public entity or an official acting in his official capacity. Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009); Carter v. Mich. Dep't of Corr., No. 1:13-cv-37, 2013 WL 3270909, at *5 (W.D. Mich. June 27, 2013) (same). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." Everson, 556 F.3d at 501 n.7; see also Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities. . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."); Law v. Stewart, No. 1:09-cv-503, 2011 WL 926863, at *7 (W.D. Mich. Feb. 7, 2011) (report and recommendation) (same), adopted, 2011 WL 901962 (W.D. Mich. Mar. 15, 2011). Therefore, the Court DISMISSES the Complaint against Defendants Schofield, Hodge, Mills, Jones, Tirey, Phillips, and Collins in their individual capacities for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment

has been construed to prohibit citizens from suing their own states in federal court.  Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 472, 107 S. Ct. 2941, 2945, 97 L. Ed. 2d 389 (1987); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984); Emps. of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare, 411 U.S. 279, 280, 93 S. Ct. 1614, 1616, 36 L. Ed. 2d 251 (1973).  "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  Va. Office for Prot. & Advocacy v. Stewart, ___ U.S. ___, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011) (citations omitted).  By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. Pennhurst, 465 U.S. at 100—01, 104 S. Ct. at 908.

"Title II [of the ADA] authorizes suits by private citizens for money damages against public entities that violate § 12132." United States v. Georgia, 546 U.S. 151, 154, 126 S. Ct. 877, 879, 163 L. Ed. 2d 650 (2006) (citing 42 U.S.C. § 12133).  The Supreme Court has held that, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II abrogates state sovereign immunity."  Id. at 159, 126 S. Ct. at 882.  A district court evaluating a Title II complaint that seeks money damages must consider,

14

on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id. at 159, 126 S. Ct. at 882. Relying on the Supreme Court's decision in Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001), the Sixth Circuit Court of Appeals has held that Title II of the ADA validly abrogates sovereign immunity for claims arising under the Due Process Clause of the Fourteenth Amendment, but not for claims arising under the Equal Protection Clause of the Fourteenth Amendment. Popovich v. Cuyahoga Cnty. Court of Common Pleas, 276 F.3d 808, 811 (6th Cir. 2002) (en banc), cert. denied, 537 U.S. 812, 123 S. Ct. 72, 154 L. Ed. 2d 15 (2002). A claim that a litigant was denied access to programs and services on account of his disability "is essentially one that he was treated differently from other, non-disabled individuals, and sounds in equal protection[.]" Robinson v. Univ. of Akron Sch. of Law, 307 F.3d 409, 413 (6th Cir. 2002). The Court of Appeals subsequently held that Popovich bars only Equal Protection claims where the litigant "claim[s] to deserve heightened scrutiny as a member of a suspect class," but not Equal Protection claims that challenge the rational basis for a public

entity's actions.  Mingus v. Butler, 591 F.3d 474, 483 (6th Cir. 2010).  In cases where the Eleventh Amendment bars money damages against a state entity, injunctive relief against that entity will also be barred.  Angel v. Kentucky, 314 F.3d 262, 265 (6th Cir. 2002); Carten v. Kent State Univ., 282 F.3d 391, 397—98 (6th Cir. 2002).

The Eleventh Amendment does not bar a suit against a state official in his or her official capacity to enjoin an ongoing violation of federal law.  Ex parte Young, 209 U.S. 123, 160, 28 S. Ct. 441, 454, 52 L. Ed. 714 (1908).  "[I]n determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Stewart, ___ U.S. at ___, 131 S. Ct. at 1639 (internal quotation marks, alterations & citations omitted); see also Diaz v. Mich. Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013) (same).  The Eleventh Amendment does not bar suits under the ADA against individual state actors in their official capacities solely for prospective injunctive relief.  Angel, 314 F.3d at 265; Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011), reh'g denied (Apr. 18, 2011).

As required by the decision in Georgia, the Court will first address whether the Complaint properly alleges a violation of Title II.  To establish a prima facie case under Title II of the ADA, a plaintiff must prove that "(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] is being excluded from

participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability." Dillery v. City of Sandusky, 398 F.3d 562, 567 (6th Cir. 2005) (alterations added & citations omitted). Money damages are only available where the discrimination is intentional. Woodward v. City of Paris, Tenn., 520 F. Supp. 2d 911, 917 (W.D. Tenn. 2007). "[T]he plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular." Tucker v. Tennessee, 539 F.3d 526, 532 (6th Cir. 2008), cert. denied, 558 U.S. 816, 130 S. Ct. 60, 175 L. Ed. 2d 24 (2009); see also Dillery, 398 F.3d at 568 ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against [the plaintiff] in particular.") (alterations & citation omitted); Logan v. Corr. Corp. of Am., No. 1:12-cv-0003, 2012 WL 2131676, at *4 (M.D. Tenn. June 12, 2012) (same).

Plaintiffs' Complaint parrots the ADA standards but provides few factual allegations. Plaintiffs allege, without elaboration, that they are disabled and that they are "being discriminated against by the [TDOC] because of their disabilities and denied access to programming, certain education, work programs, transfers, and in cases visits and access to the courts." (D.E. 1 at 6.) The remaining contentions assert that some disabled prisoners are being discriminated against, but no details of any discrimination against any Plaintiff is provided. (Id. at 6–7, 9–10.) Therefore, the Complaint, as submitted, is subject to dismissal because it does

not assert a plausible claim of discrimination on behalf of any named Plaintiff arising from his incarceration at the NWCX.

Three of the four Plaintiffs have supplemented the Complaint with inmate grievances that purport to show the basis for their claims. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A stack of documents cannot substitute for specific factual allegations in a pleading. See Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) ("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding.") (citations omitted); Septer v. Warden, Hocking Corr. Facility, No. 2:12-CV-01209, 2013 WL 4456043, at *2 (S.D. Ohio Aug. 16, 2013) ("[I]t is the plaintiff's job, and not the Court's, to sift through his various grievances and both to decide, and plead with some level of specificity, what claims he intends to assert against what defendants."); Mobley v. Warden London Corr. Inst., No. 2:09-cv-638, 2010 WL 518033, at *1 (S.D. Ohio Feb. 1, 2010) (form complaint accompanied by many inmate grievances "do[es] not constitute a proper complaint"). Because it has discretion to allow Plaintiffs to submit an amendment that cures the deficiency in their original pleading, the Court will

address the substance of the claims discerned from the various inmate grievances.

The documents submitted by Perkins establish that he suffers from a herniated disc, that he is receiving appropriate medical treatment at the NWCX, but that it is painful for him to ride in a transport van to see medical providers and make unspecified court appearances in Nashville.  He seeks an order transferring him to any TDOC facility in Nashville.  See supra pp. 8—9.  Those allegations are insufficient to state a claim under Title II of the ADA because there is no allegation that Perkins has been excluded from participation in, been denied the benefits of, or excluded from participation in any program solely because of his disability. See 42 U.S.C. § 12132.[4]

The factual affidavit and grievances submitted by Roberts state that he has not received appropriate medical care at the NWCX and that family members are unable to travel to the facility to visit him.  He seeks to be transferred to the CBCX in Nashville, Tennessee, and asserts that, because he is a Class B or Class C inmate, he is ineligible for a transfer.  A claim about substandard medical care ordinarily is not actionable under Title II of the ADA.  See, e.g., Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012) ("Brown's complaint merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because

---

[4]     Perkins' claim that the van trips to Nashville are painful might be redressable in a suit under 42 U.S.C. § 1983 as a violation of the Eighth and Fourteenth Amendments, provided the other requirements for suit are satisfied.

of a disability."); <u>Burger v. Bloomberg</u>, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (challenge to medical treatment decisions not actionable under ADA); <u>Fitzgerald v. Corr. Corp. of Am.</u>, 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); <u>Spencer v. Easter</u>, 109 F. App'x 571, 573 (4th Cir. 2004) (per curiam) (claim of inadequate medical care not actionable under the ADA absent evidence of discriminatory intent arising from prisoner's disability), <u>cert. denied</u>, 544 U.S. 911, 125 S. Ct. 1611, 161 L. Ed. 2d 289 (2005); <u>Baldridge-El v. Gundy</u>, ___ F. App'x ___, 2000 WL 1721014, at *2 (6th Cir. 2000) (ADA does not provide a cause of action for medical malpractice); <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners"), <u>reh'g denied</u> (Aug. 1, 1996).

Roberts' allegations that he is ineligible for a transfer to another TDOC facility because of his disability arguably asserts a claim under Title II of the ADA. Since the commencement of this action, he was transferred from the NWCX to the CBCX, the prison where he sought to be transferred. Therefore, his claim for injunctive relief under the ADA is moot. <u>Moore v. Curtis</u>, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); <u>Kensu v. Haigh</u>, 87 F.3d 172, 175 (6th Cir. 1996) (same); <u>Tramber v. Pleasant</u>, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a

transfer and medical care moot when he was transferred to another
facility).  Roberts' assertion for money damages against the State
of Tennessee for past violations of the ADA is not moot.

Murdock's grievances establish that there are no programs that
he can access at the NWCX "considering [his] offense" (D.E. 1-1 at
8), that he is ineligible for a transfer to the geriatric unit at
CBCX and DSNF because of his medical classification (id. at 7,
10—11, 14), and that he is ineligible for a transfer to take a
staff job at DSNF, CBCX, or RMSI because he is Class B medical (id.
at 13).  He also asserts that he is ineligible to transfer to an
institution that offers programs that can enhance his parole
eligibility because of his medical conditions and his
classification as Class B medical.  (Id. at 15.)

Murdock's claim that there are no programs for him at NWCX
"considering [his] offense" is not actionable under the ADA because
there is no allegation that he has been excluded from participation
in, been denied the benefits of, or excluded from participation in
any program solely because of his disability.  See 42 U.S.C. §
12132.

Murdock's contention that he is not eligible for a transfer to
a geriatric unit at another TDOC prison because of his disability
arguably is actionable under Title II of the ADA.  His claim that
he is not eligible for transfer to the DSNF, CBCX, or RMSI and is
not eligible for a staff job at those facilities also is arguably
actionable under Title II of the ADA.  The latter assertion appears

to be moot because Murdock has been transferred to the RMSI.[5] Murdock's claim for money damages against the State of Tennessee for past discrimination is not moot.

Because Murdock and Roberts have allegations that might be actionable under Title II of the ADA, it is necessary to proceed to the next step of the analysis mandated by Georgia as to those claims, namely, whether the conduct that violated the ADA also did so with regard to the Fourteenth Amendment. None of the ADA claims asserted by Murdock and Roberts are actionable under the Due Process Clause of the Fourteenth Amendment. An inmate's right to due process is implicated only if a restriction involves a constitutionally protected liberty interest. Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011), reh'g denied, ___ U.S. ___, 131 S. Ct. 1845, 179 L. Ed. 2d 796 (Apr. 4, 2011); Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L. Ed. 2d 174 (2005). "A liberty interest may arise from the Due Process Clause or a state regulation." Grinter v. Knight, 532 F.3d 567, 573 (6th Cir. 2008). Any liberty interest created by state law "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995).

---

[5]     It is unclear whether Murdock has an incentive job at the RMSI and, therefore, the claim seeking a transfer so he can obtain a prison job is not moot. It also is not clear why Murdock could not get a prison job at the NWCX.

Prisoners have no constitutional right to discretionary release on parole before the expiration of their sentences, Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104, 60 L. Ed. 2d 668 (1979); Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991), and "[p]risoners have no liberty interest in opportunities to obtain good-time credits," Martin v. O'Brien, 207 F. App'x 587, 589—90 (6th Cir. 2006). Inmates also do not have a liberty interest in participation in prison rehabilitation programs. See Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9, 50 L. Ed. 2d 236 (1976); Manning v. Unknown Parties, 56 F. App'x 710, 711 (6th Cir. 2003) (parole board's recommendation that inmate complete a program on impulse control did not create a liberty interest requiring his admission into the program); Harrington v. Smokoska, ___ F. App'x ___, 1992 WL 376855, at *2 (6th Cir. 1992) (affirming dismissal of claim for inmate's removal from halfway house program, stating "[t]here is no liberty interest in being placed in a community residential program or within any particular prison in the state of Michigan"); Jones v. Nichols, ___ F. App'x ___, 1990 WL 151047, at *1 (6th Cir. 1990) (affirming dismissal of claim that inmate was denied credit for barber training classes, stating "[t]here is no constitutional right to vocational or educational programs in prisons. Nor does Jones have a state created liberty interest in such programs subject to due process protection.") (citations omitted); Molenkamp v. Brown, ___ F. App'x ___, 1990 WL 75225, at *1 (6th Cir. 1990) ("Molenkamp has

23

no liberty interest in participation in the community release program subject to due process protection, as participation in the program rests within the discretion of prison authorities."); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (no liberty interest in study and work-release programs); Frantz v. Mich. Dep't of Corr., No. 1:11-cv-584, 2011 WL 3100564, at *7 (W.D. Mich. July 25, 2011) ("Federal courts consistently have found that inmates have no constitutionally protected liberty interest in prison employment, vocational, rehabilitation, and educational programs based on the Fourteenth Amendment.") (collecting cases); Bush v. Hogsten, No. 6:11-CV-00167-KSF, 2011 WL 2682971, at *3 (E.D. Ky. July 11, 2011) (dismissing habeas petition requesting placement in federal Residential Drug Abuse Treatment Program, explaining that "it is well settled that prisoners have no constitutionally protected liberty interest in either discretionary release prior to the expiration of their prison terms or participation in any prison rehabilitation programs") (citation omitted); Jones v. Benion, No. 2:10-CV-12360-DT, 2011 WL 2221166, at *3—4 (E.D. Mich. May 13, 2011) (report and recommendation) (inmate has no liberty or property interest in participation in programs required for parole), adopted, 2011 WL 2183384 (E.D. Mich. June 6, 2011).

"[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by language of an unmistakably mandatory character." Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989) (internal quotation marks & citations omitted). The Sixth Circuit

has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job.  See, e.g., Shields v. Campbell, 83 F. App'x 72, 74 (6th Cir. 2003), cert. denied sub nom. Shields v. White, 541 U.S. 996, 124 S. Ct. 2033, 158 L. Ed. 2d 505 (2004); Carter v. Tucker, 69 F. App'x 678, 680 (6th Cir. 2003); Jewell v. Leroux, 20 F. App'x 375, 377 (6th Cir. 2001); Dellis v. Corr. Corp. of Am., 257 F.3d 508, 511 (6th Cir. 2001); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987).

Inmates also do not have a liberty interest in their prison assignments.  See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245, 103 S. Ct. 1741, 1745, 75 L. Ed. 2d 813(1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); Meachum v. Fano, 427 U.S. 215, 224—25, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976) (Due Process Clause not implicated by assignment of prisoner to any prison within a state or by transfer to another institution), reh'g denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (Oct. 4, 1976); Montanye v. Haymes, 427 U.S. 236, 243, 96 S. Ct. 2543, 2547, 49 L. Ed 2d 466 (1976) (inmate had no liberty interest in "remain[ing] at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct"); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992) (federal law does not create any liberty interest that would allow a state prisoner to avoid a reclassification and transfer to a close security prison), cert. denied, 510 U.S. 842,

114 S. Ct. 127, 126 L. Ed. 2d 91 (1993); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986) ("A prisoner has no inherent constitutional right to be housed in a particular institution or to enjoy a particular security classification.") (citations omitted).

The claims of Murdock and Roberts arise only under the Equal Protection Clause of the Fourteenth Amendment. The Court declines to dismiss those claims as barred by Popovich at this stage of the litigation because it is not clear whether the inmates are claiming that their disabilities render them members of a protected class for equal protection purposes or whether they contend that there is no rational basis of their unequal treatment. See Minqus v. Butler, 591 F.3d at 483. For the same reason, it is premature to address the third step of the Georgia analysis, which assumes that a prisoner has asserted a valid claim under the ADA that does not also violate the Fourteenth Amendment.

The Sixth Circuit recently held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. LaFountain v. Harry, 716 F.3d 944, 951 (6th Cir. 2013); see also Brown v. Rhode Island, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. Brown, 511 F. App'x at 5; Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule

12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."), <u>cert. denied</u>, 534 U.S. 922, 122 S. Ct. 274, 151 L. Ed. 2d 201 (2001). The claims against the Defendants Schofield, Hodge, Mills, Jones, Tirey, Phillips, and Collins in their individual capacities cannot be cured by amendment for the reasons previously stated.  See <u>supra</u> p. 13.

The Court cannot conclude that any amendment to each Plaintiff's remaining claims would be futile as a matter of law. Therefore, leave to amend is GRANTED. All of the Plaintiffs will be allowed to file a separate amended complaint pertaining to his treatment at the NWCX.  Any amendment must be filed within thirty days of the date of entry of this order.  Plaintiffs are advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleading. The text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.

Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. The amendment may not include any claim that was not in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If any Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss the action as to that Plaintiff and will assess a strike pursuant to 28 U.S.C. § 1915(g).

IT IS SO ORDERED this 26th day of September, 2013.

s/J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE